State Number 172894, Airways, et al. Lead Industries Association, Inc State Number 172894, Airways, et al. I represent the plaintiffs in this case, the appellants. The issue in this case has been framed as whether the plaintiffs incurred any expense, obligation, or liability for the lead poisoning tests their children were required to undergo. The need for the testing was caused by conduct of the defendants, who are lead pigment manufacturers. Lead pigment is the primary element in lead paint. And it is alleged that these defendants, starting almost 100 years ago now, engaged in conduct which still plagues our communities today. And that is back when they were using lead paint. The only count as I recall you have left is a conspiracy count? Yes, Your Honor. So it's a conspiracy. That's fine. The question was, and is, whether these plaintiffs incurred an expense, an obligation, or a liability for the testing. That's the issue in this case. Just that simple. I agree, Your Honor. It's more complicated whether they're good guys or bad guys. Correct, Your Honor. And our position is that they did incur an expense, an obligation, and a liability. And they are outstanding and suffered damages that they can recover in this case. And the reason we say that first and probably foremost is in this Court's initial decision in this case back in 2003, the Court recognized that these plaintiffs, who are the parents, the mothers, of these children, were seeking as compensation the costs of the test. That's all they were seeking. And the Court held that if it was the defendant's breach of duty to make it necessary. Counsel, this was an economic injury, allegedly, right? So aren't they required to prove damages? How do you do that if they haven't incurred any? They didn't. In an economic injury case, particularly in a case where we're dealing with medical expenses, in a situation where we had children being tested, it's not simply an economic case like a breach of contract case. We say that in this case. Well, I think the complication here is the Medicaid issue, isn't it? I mean, the fact is that they didn't incur and they could never incur any actual liability for this because if you are a Medicaid recipient, the provider can't go after you personally once Medicaid, your Medicaid eligibility is established and once the provider is paid or not paid as the case may be. So what – how would the plaintiffs ever be able to establish that they are liable for? When you bring a child to a doctor's office and ask him to perform a medical service, and that's – that is the point which not only we but the Supreme Court has said, that you have when you take a child to a doctor and you ask the doctor to perform services, he expects to be paid, you expect he will be paid, you may give him a public aid card, you may give him an insurance card, and somewhere down the road somebody else may pay that expense, but all that does is discharge that liability that you have. I take it that your basis for arguing that there was an obligation on the part of these plaintiffs to pay is the Family Expense Act. Is that where their obligation comes from? Yes. The Supreme Court has said that parents are obligated to pay the expenses of the family, including medical expenses. Correct. Okay. So they take the child to the doctor and the doctor performs a test. Your argument is that at that point in time they were obligated to pay the bill, even though it was going to be discharged by public aid, and public aid could not come back after them. And then I take it the rest of your argument is that the collateral source rule prohibits the tortfeasor from taking advantage of the payment by the third party. Exactly, Your Honor. Exactly. And that's it in a nutshell. The fact that the public aid pays the doctor's bill sometime later, maybe or maybe not, and they reject the claim, until that point, that parent has an obligation, a liability to that doctor. So the obligation, according to you, is incurred at the time that they take the child to the doctor, and the obligation is not discharged until public aid makes the payment. Correct, Your Honor. Correct. Or insurance, in the case of the other parents. Your Honor, I turn around and argue and say yes, but because these doctors were participating in public aid, they could not bill the parents. And so if they could not bill the parents, how then do you say the parent was obligated? Well, the parent has an obligation under the public aid statute to, if public aid pays the bill, if the parent seeks to recover from the third party, then the parent has a liability and an obligation to the state to reimburse that payment to the state. And that's exactly what's happening in this case. The other point I want to make... Counselor, can I ask you what the cost of this test is? We estimate that the test is a blood, they draw blood, then they send it to a lab. My lab determines whether there's a certain level of blood. So we know the lab cost is fixed by statute. If it was $25, it may have gone up. And then the doctor's cost may be another $50. They typically don't sort it out in their billing. So at the top, we're talking $100? Yes. So this litigation is all about whether the family will receive, the parents will receive $100 and then in return send that to public aid? Well, not necessarily, Your Honor. Because under Wills v. Foster, the court has held now, and the Supreme Court has said that you can make a claim for the reasonable value of the services regardless of whatever public aid or private insurance paid. So let's say the actual reasonable cost of the service is $100, but private insurance or public aid have an agreement with the provider that they'll only charge $50. The plaintiffs in this case can recover the $100, Medicaid, public aid, and in this case assert their lien and get the $50, and our clients would receive the difference. Can I ask you a question? Who asked for a 304A finding in this case? We did. What sense did that make to you, the fact that you still have a viable plaintiff below? We don't. Well, wait a minute. There was no 304A finding under the dismissal of the third plaintiff. Correct. Correct. He refused the 304 on the third plaintiff. Well, what sense does it make to grant 304 on these two plaintiffs and not on the third? Judge. It makes no sense at all. Because he did. He did address the collateral source rule in his ruling on these plaintiffs. So to us it was like it's the same issue. And, again, so our position, as Justice Hoffman pointed out, is pretty simple, straightforward. The parents have an obligation. Is there any reasonableness involved here at all? Let's say a parent gets a bill for taking their child for a blood test for $25,000. That is an expense, an obligation, a liability on the part of the parent, and immediately because they brought him to the doctor. Is that your interpretation? Well, it has to be a reasonable expense. Well, okay. Yes. So we have no idea what the reasonableness of all this is, do we? We don't have any evidence of that in this record, no, Your Honor. I mean, we know what the lab cost is. But to say this is an absolute, the minute you get to that doctor's office and you incur whatever, it is an expense or obligation or liability? Oh, yes. Well, wait. Can I answer my question? Sure. I wanted to ask a question. Is it your suggestion that when they incur the obligation, they only incur the obligation to pay the reasonable value, or do they incur the obligation to pay whatever the doctor charges? I think it would be reasonable because if the doctor assessed the unreasonable amount, $25,000, they could not pay it, then contest that, And the law is pretty clear that you can recover the reasonable value of the services. And there has to be evidence of that. But we're not even there yet. We're not even close to there yet, Your Honor. But the top we're looking at is $100. I believe so, Your Honor. But remember, there's about 300,000 children tested a year. And this has been going on since 1990. I'm talking about two plaintiffs here. Correct. Two plaintiffs in this case. Correct. $100 is what it's issued. For these two plaintiffs, correct. Correct. There's nothing further. Give me five minutes, and we're voting. Thank you. Good morning, Your Honors. Carol Hogan on behalf of the defendants. If it pleases the Court, I'm going to split my time with Mr. Hardy. I'll put it by 12 minutes, and I'll leave Mr. Hardy three, and I'll just turn my time around so that I don't overstep my bounds. The Court identified the key issue here. We're talking about two plaintiffs who admittedly have incurred no cost, obligation, or liability. Obligation. Let's talk about obligation and expenses. Yes. So, Judge, the cases in the Supreme Court about incurring say that incur means to become liable for. When you go to the doctor, and the doctor is a voluntary provider who accepts Medicaid, and he agrees to provide the services to you pursuant to the Medicaid statute, you incur nothing. In other words, the doctor does not have the option later to decide, which I think has been posited by plaintiffs, that the doctor could maybe decide not to bill Medicaid and instead come after the beneficiary. Once that doctor voluntarily provides the services to the beneficiary under Medicaid, there is no obligation on the parent. So the minute, as I as a parent, I do have an obligation to take care of my children, but that's quite a different question than whether I pay for the services my child receives from a doctor. And when I walk into a doctor's office, and the doctor accepts, agrees to see my child, knowing I'm a Medicaid beneficiary, I incur nothing. And the doctor, as you pointed out, Justice Hoffman, cannot come after the beneficiary, not even for unpaid co-pays, not even if the state fails to reimburse the provider. The beneficiary is insulated by our statutory scheme from any obligation to the provider. So to argue that there is an obligation to the provider, I believe, is simply wrong. And I would also like to address the collateral source rule, if I may. The collateral source rule shouldn't even come into play here, because this is an economic tort case where the injury is the damage. It's a unique claim, for sure. Counsel, every action by a parent under the Family Expense Act is purely an economic injury. It has nothing to do with the underlying injury. Anytime a parent takes a minor child to the doctor, if it be because he got hit by a car or whatever, the reason why he was taken to the doctor, the instant the parent takes the child to the doctor and incurs an expense for the payment of those medical expenses, that is a purely economic injury to the parent. Understood, Your Honor. Every Family Expense Act case. Are you suggesting that the collateral source rule should never apply under any circumstance to a Family Expense Act? Well, I would never say yes to that question. But you just answered the question in your statement to me. You said the minute you incur an expense, there was no incurrence of any expense here. But I'm talking – let's talk about what you said about the family and the collateral source rule. It doesn't apply because it's a purely economic injury? Well, no. I just started to – what I meant to say was because of the nature of the claim where the injury is the damage. In other words, in this case, there is no separate injury from the cost of the test. The injury is the damage in every Family Expense Act case brought by a parent. Okay. But, Your Honor, in those cases, there may have been other sources of damages other than the cost of the test. And aren't those cases – Not to the parent, there isn't. Okay. But those cases probably involve claims, I take it, between parents fighting about who's responsible for paying for the cost of their child's care. No. What the parent does is when the parent – when the parent incurs the obligation to pay for medical expenses for a child, a cause of action arises in favor of the parent because of the obligation created by the Family Expense Act. We call it Family Expense Causes of Action. They're brought all the time by parents. That's right. But, Your Honor – The parent – the only injury to the parent – the only injury to the parent is the obligation to pay the medical bill. That's right. There is no other injury. There's no personal injury to the parent. It is a purely economic cause of action. Your argument in that regard will briefly follow. Okay. Well, I think the problem is that, as Justice Cunningham pointed out, we have a Medicaid issue here where there's no incurrence of an expense at the beginning. Hold on a second. Let's not mix apples and oranges. I am going after your argument that the collateral source rule would not apply because this is a purely economic injury, and I'm suggesting to you the argument has no merit. Okay. Well, I guess – let me try it a different way, Your Honor, if I may. To allow the collateral source rule to apply in this case to save the claims of Ms. Banks and Ms. Lewis, which is really the only thing we're talking about here, would be to create an injury where there is admittedly not one. No, that's not true. The collateral source rule doesn't come into play unless there first of all is an injury vis-à-vis an obligation to pay the bill. So if you want to talk about the existence of the public aid payment and public aid statutes, eliminating the expense obligation or liability notions of the action, then in that particular case it has nothing to do with collateral source. Collateral source doesn't come into play until we first have an obligation. That's right, Judge. I think I'm agreeing with you, but maybe I'm not communicating it. No, because you made an argument in your briefs that says the collateral source rule is inapplicable because it's purely economic injury. I'm telling you that makes no sense. I think what we're trying to say is until there is an incurred injury, until there is an injury, the collateral source rule talks about diminishing damages. And if you don't have an injury, to your point, if you haven't incurred an expense obligation liability, in other words, you have no injury, you don't even begin to talk about the collateral source rule because there is nothing to diminish. There's a question about that. Okay. I think we're agreeing with you on that. I don't reject the notion that collateral source rule does not apply to cases involving purely economic injury. And that's just not the case. Okay. I think I understand what we're talking about. Let me ask you. Certainly. Isn't the real question who incurred the cost and not who paid it? I mean, you're talking about the fact that a third party is going to pay this. So the fact that the parents incurred the cost is really of no moment because it's going to be paid by Medicaid, and the parents are completely insulated from the cost. But the moment the parent takes that child to get the test, they incur that cost. The fact that a third party is going to pay the cost, does that make a difference to you or no? I think, again, I go back to the definition of incurred being to become liable for, which is the definition of what incur means. And I believe when you walk into a doctor's office as a Medicaid beneficiary, you do not incur any liability or obligation or expense for the medical services provided to your child. So if we look just at Ms. Banks and Ms. Lewis, because they are unique, they're not like someone with private insurance and they're not like someone who's a self-pay. When they walked into their doctor's office, they did not incur any expense, obligation, or liability because they couldn't under the statutory scheme. They never became liable for the payment of those medical services to anyone. Any case specifically on point here with this issue? I don't think so, Your Honors, because it is very difficult because of the unique nature of the claim that's been brought. So I can't cite a case that's directly on point. I think there's plenty of cases that talk about the definition of incurred means to become liable for. We've both cited those cases. What do we do with the language in Willis v. Foster that provides the fact that the source of the payment was Medicaid as opposed to a private insurance company is, and quote the language, a distinction without a difference? What do we do with that language? Well, in thinking of Willis v. Foster, Your Honor, they were talking about the amount of damages the plaintiff could recover for the injury in that case. And in that case, I think the court was very clear that it makes no difference who pays. And when it comes to damages diminishment, the defendant was not entitled to diminish the plaintiff's damages because Medicaid paid them. That's quite a different thing than what we're talking about here where there is no injury. There are no damages to diminish. One comment, though. If the element of damage is medical expenses and it's paid for by Medicaid, and under your theory because it's Medicaid there would never be an obligation, wouldn't the argument be exactly the same one that you're using now? There was no damage to the extent that Medicaid paid it? Well, except, Your Honor, there they were talking about diminishing damages in the face of a real injury. And in this case, Ms. Banks and Ms. Lewis, again, the only two people we're talking about, simply have no injury. So you don't even get to the question of whether you diminish damages by Medicaid versus private insurance payer because you have no injury. And that's the fundamental crux of our argument before the court this morning. Okay. If there are no further questions, do you want to sit? Mr. Henry, would you like to? Timothy Hardy, Officer for the Defendants. I just have to clarify a few things. I've read Woolsey-Foster very carefully. And what Woolsey-Foster says about the collateral source rule is that when there is an injury, and the injuries that are discussed in Woolsey-Foster are all personal injuries. He looks at all the cases he discusses. He looks at the statutes it cites which have amended the collateral source rule. All those cases, all those statutes, we clearly are talking about when there is a personal injury, then the damages do not diminish. Your theory is, then, that when you have a case brought under the Family Expense Act, that in that particular case, the collateral source rule never applies. Is that your theory? I'm not totally familiar with the Family Expense Act. Tell me if I'm right. But I understand it has to do with whether mothers or fathers pay and they're suing each other. No. It doesn't have to do with when they pay. The Family Expense Act simply codifies a Supreme Court decision that says, you are responsible for the expenses of your minor children, including medical expenses. All right? So the Family Expense Act now codifies that. Right. So is it your theory, then, that as to Family Expense Act cases, that is, cases brought by the parent for family expenses that they had to pay on behalf of their minor children, that the collateral source rule never applies? Is that your theory? Because that's purely economic damage. That's purely an economic injury. No personal injury involved. The child's cause of action may be based on personal injury. Right. But the parent's cause of action is purely economic. Well, I guess if the underlying case involved personal injury, which made the parent have to pay some money, then the collateral source rule, I would guess, the way I understand it, could apply. But that's not what happened in this case. Well, just one little analogy. Parents talk many times in their briefing about, it would be different had this been a free or gratuitous provision of medical care. And I ask myself, well, how could that happen? Well, I think we all know there's free fares in the lands, and they may be offering better tests. And I think what parents are saying is, well, in their case, there never would have been an expense, a liability, an obligation. I think exactly the same thing is true here. Instead of going to a van at a street fair, Mrs. Banks and Mrs. Lewis went to a doctor who said, I accept Medicaid. And from there on out, they didn't pay. They didn't incur a liability or an obligation. And just as if they had been at a street fair, which I completely agree would not have caused an expense, liability, or obligation. Thank you. Thank you. Ms. Hogan? Sure. Hold on. Wait, wait. Counsel. Counsel. Ms. Hogan. Okay. Would your analysis change any, Ms. Hogan, if we're talking about the definition of incurred? Yes. If it's private insurance versus public aid? It might. It very well might, Your Honor. It's not an issue before the court, and I haven't thought that through. But if, for example, if there was some portion that was incurred when you walk into the doctor as a private insured patient, the analysis might be different. But in this case, I think it's clear that there was an incurrence of nothing when they walked into the doctor. Thank you. Okay. Thank you. Okay. Your Honor. Yes, thank you. Didn't incur. So they're not arguing about expense, obligation, or liability. They're arguing about the word incurred. They say you never incurred it. I think Willis versus Foster is directly on point here because it overruled Peterson versus Lou Audra Chevrolet where, in that case, the question was, can you recover in a court action for purely free medical services? In that case, the child was injured, went to a hospital where he got free medical services, and the plaintiff, the parent, sought to recover the reasonable value of those free services. And Lou and Peterson, the court said, no, you can't do that. But in Willis, the court specifically reversed that, and they adopted the restatement on this point that specifically says that even if the service is free, even if you didn't pay a dime for it, you can recover from a tortfeasor the reasonable value of the services you receive. So whether we incurred, whether we paid, it doesn't matter, unless we're going to say the collateral source rule doesn't apply to this case, which doesn't make any sense at all. But the collateral source rule only comes into play if there was an obligation incurred. If there's no obligation incurred, then there's no reason to apply the collateral source rule because you have no cost of action. Well, but Willis says even if you had, you incurred no obligation, even if the services were free. No, we understand that. But the question is, did you incur an obligation? And it occurs to me that when you deal with the Family Expense Act, it is purely an economic damage case. Now, the question I've been trying to get at is, is the argument being made that in a purely economic damage case, there is no application of a collateral source rule? Does that only come into play when there is a personal injury element of the damages being sought? Well, I would say no, Your Honor. I mean, but the collateral source rule at its core, what it's really about, is that if you have some arrangement, whether it's with the government, whether it's with an insurance company, whether it's with somebody else. The foreseasor cannot take advantage of your arrangement. The foreseasor cannot take advantage of it. And this is an intentional court case. And why wouldn't it apply in this case? Just because the children weren't poisoned? All of a sudden, the defendants get to walk away free of charge because their children weren't poisoned? And that's the child's claim anyway. What does it have to do with the parent's claim in this case, as Your Honor pointed out? So we think the collateral source rule applies. Willis answers the question in this case, as did this Court back in 2003, when it said this economic loss that the parents suffered, even though there was no physical injury, is the recoverable loss. What do you do with your argument that says you never incurred an obligation because it was public aid and the doctor could not come after you, the doctor cannot seek reimbursement from you, public aid can't seek reimbursement from you, period? You incurred no obligation. I disagree with that. I say when you walk into the doctor's office, whether you're holding a public aid card, an insurance card, or something else, you incur an obligation if you engage that doctor. So your argument, I take it, is they incurred an obligation that was their obligation until it was discharged by the payment made by public aid? Right. And if it's discharged by the public aid … Well, then there's no question that Willis … All public aid says is that if public aid discharges that obligation, the doctors say they only paid $25 of the $50 charge, the doctor can't come back after the patient, unlike regular insurance. That's all it says. It doesn't say from the minute you walk in the office you have no obligation at all. And also, you can't ignore the fact that the public aid statute says the parents are obligated to reimburse public aid if they get a recovery from a tortfeasor. If the parents couldn't recover in the first instance, why would you have a statute that says we have a remand for recovery? It makes no sense. Thank you, Your Honors. Counsel, thank you. Very interesting case. The matter will be taken under advisement, courts adjourned.